UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COLUMBIA MUTUAL INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | | |
| v. | § § § | Civil Action No. _____ |
| AEROWAVE TECHNOLOGIES, INC., AND JOHNNY KEITH PRESCHER, INDIVIDUALLY AND AS HEIR OF JULIA PRESCHER, DECEASED | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Columbia Mutual Insurance Company files this Complaint for Declaratory Judgment and respectfully shows as follows:

**I.**
**PARTIES**

1. Plaintiff Columbia Mutual Insurance Company ("Columbia") is a citizen of Missouri, incorporated in the State of Missouri and having its principal place of business at 2102 White Gate Drive, Columbia, Missouri.

2. Defendant Aerowave Technologies, Inc. ("Aerowave") is a citizen of Texas, incorporated in the State of Texas and having its principal place of business at 250 E. Valley Ridge Blvd. in Lewisville, Texas. Aerowave may be served with process through its registered agent, Michael P. Gardenhire, at 205 Lake Trail Drive, Double Oak, Texas 75067.

3. Defendant Johnny Keith Prescher, individually and as heir of Julia Prescher, Deceased, (collectively, "Prescher") is an individual who is a citizen of Texas. Prescher may be

served with process at his residence located at 9000 Ridge Court, Cleburne, Texas 76033 or wherever he may be found.

## II.
### JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Columbia is a citizen of Missouri and Defendants are citizens of Texas. Therefore, complete diversity of citizenship exists and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Columbia seeks a declaration regarding its rights and obligations under policies of liability insurance issued to Aerowave. Prescher contends that he has claims that are covered by the Columbia policies and, therefore, has a judicially cognizable interest in the declaration sought.

5. Pursuant to 28 U.S.C. § 1391(b)(1), (2), venue is proper in the Eastern District of Texas because Aerowave resides in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## III.
### BASIS FOR CLAIM

6. This is a dispute over coverage under a primary liability insurance policy, Policy No. BOPTX0000096324, and a commercial liability umbrella insurance policy, Policy No. CUPTX0000011506, issued by Columbia to Aerowave (collectively, the "Policies").

7. Aerowave submitted a bid and contracted with Gerdau Ameristeel, U.S., Inc. and/or Chaparral Steel Company, or a subsidiary or affiliate, to design, program, install and maintain sophisticated radio equipment necessary for communications between workers in the extraordinarily loud and difficult environment of a major steel manufacturing facility.

8. Aerowave has been sued in a lawsuit styled *Johnny Keith Prescher and Julia Prescher v. Chaparral Steel Company, et al.*, Cause No. DC-C201600481 in the 413th District

Court of Johnson County, Texas (the "Underlying Lawsuit"). The Underlying Lawsuit alleges:

> …On or about June 23, 2016, Mr. Prescher was working in and around the melt shop located at 300 Ward Road in Midlothian, Texas ("Melt Shop") with express permission and consent for work. On information and belief, Mr. Prescher was on-site working for Defendant Chaparral as a production operator. Upon information and belief, Mr. Prescher was working in the melt shop located at 300 Ward Road in Midlothian, Texas, and was guiding the operator of an overhead crane hoisting a ladle of molten steel heading towards its turret using voice commands over a radio system. **Per usual protocol, the operator of the overhead crane would have heard continuous guidance and commands from Mr. Prescher through the radio system. However, on the date of the incident made the basis of this suit, the radios and/or radio system failed to work properly.** Mr. Prescher, seeing that the ladle and turret were not in line and in need of adjustment by the operator, began to walk across the melt shop floor so that the operator could see him. On information and belief, a method of hand signals from the employee on the melt shop floor to the operator of the overhead crane was used in the case of disrupted communications such as the one that occurred on June 23, 2016. As Mr. Prescher made his way across the melt shop floor and toward the overhead crane operator's line of sight, the ladle bumped the turret, and dumped molten steel onto the work floor. The ensuing blast of flames, debris and molten steel engulfed Mr. Prescher, severely burning almost his entire body. (Emphasis added).

\* \* \*

> …Prior to the incident in question, Defendants Motorola, Upchurch, Curry, Blair and Aerowave had received multiple, specific complaints about how the radios and/or radio system in the Melt Shop were not functioning properly. Upon information and belief, at all times material to this incident, Defendants Blair, Aerowave, Motorola, Upchurch, and Curry created the danger at the Melt Shop and were a proximate cause of the incident. On information, belief and material evidence, from the time period of January 1, 2013 to the date of the incident, Defendant Blair was paid over $200,000.00 for radios and radio programming services for the Melt Shop. During the time period of May 31, 2016 to June 2, 2016, less than 30 days before the incident in question, Defendants Aerowave, Motorola, Curry, and Upchurch were actually working in the Melt Shop and determined that:
>
>> 60% of the transmissions observed at Gerdau Steel <u>do not</u> meet our expectations for digital audio quality. (emphasis in original).
>
> Notwithstanding that actual knowledge and after having visited the Melt Shop on multiple occasions to witness the clear dangers associated with handling hundreds of tons of molten steel on any given day, Defendants Aerowave, Motorola, Curry, and Upchurch failed to insist that immediate corrective actions be taken.

9. Based on these factual allegations, the Underlying Lawsuit asserts claims against Aerowave for negligence, breach of express warranty, and breach of implied warranty. Specifically, Aerowave is allegedly at fault for its:

1. Failure to exercise ordinary care to avoid reasonably foreseeable injury to Mr. Prescher;

2. Exposing Mr. Prescher to unreasonable risk of harm and injury;

3. Failure to properly and adequately maintain and/or program the radios and/or radio system in a reasonably working condition;

4. Failure to provide reasonable and adequate warnings to dealers and consumers, including Mr. Prescher, about the failures and the unreasonably dangerous condition of the radios and/or radio system;

5. Creating a dangerous condition of the radios and/or radio system and allowing the dangerous condition of the radios and/or radio system to exist;

6. Failure to correct the unreasonable dangerous condition of the radios and/or radio system prior to the incident;

7. Failure to make safe the dangerous condition of the radios and/or radio system;

8. Failure to monitor, maintain, inspect and insure the radios and/or radio system's integrity;

9. Knowing about the dangerous condition related to the radios and/or radio system, but consciously indifferent to the rights, health, welfare, and/or safety of those persons affected by it; and

10. Failure to supervise, train, monitor and look out for the workers, independent contractors, and other personnel Defendants Blair Communications, Inc., Aerowave Technologies, Inc., Motorola Solutions, Inc., Trace Upchurch, and Don Curry had knowledge and/or reason to believe would be at or around the Melt Shop on the day of the incident.

11. Negligently failing to test and/or program the radios and/or radio system to ensure that they worked properly in and around the Melt Shop;

12. Improper design of the radios and/or radio system;

13. Marketing the radios and/or radio system in such a way as to mislead consumers generally, as to the ability of the radios and/or radio system;

14. Improper and inadequate testing of the radios and/or radio system;

15. Failing to carefully, properly, or adequately test and/or program the radios and/or radio system to ensure that they performed safely when used in a reasonably foreseeable manner;

16. Failing to carefully, properly, or adequately test and/or program the radios and/or radio system and/or inspect the radios and/or radio system before placing them into the stream of commerce; and

17. Negligently and falsely representing and marketing the radios and/or radio system as being safe and durable for their intended use over the long term, and as being of appropriate quality for their use under a variety of conditions.

…Defendants Blair Communications, Inc., Aerowave Technologies, Inc., Motorola Solutions, Inc., Trace Upchurch, and Don Curry were also negligent in the installation, maintenance, and repair of the radios and/or radio system in the Melt Shop. Specifically, Defendants Blair Communications, Inc., Aerowave Technologies, Inc., Motorola Solutions, Inc., Trace Upchurch, and Don Curry had a duty to exercise ordinary care and install, maintain, and repair the radios and/or radio system in the Melt Shop so that they did not become dangerous. Defendants Blair Communications, Inc., Aerowave Technologies, Inc., Motorola Solutions, Inc., Trace Upchurch, and Don Curry breached that duty by failing to install, maintain, and repair the radios and/or radio system in the Melt Shop in such a way that there was no hazard to begin with. …

10. Columbia issued the Policies to Aerowave. The primary policy provides, in relevant part, as follows:

**A. Coverages**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But

* * *

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

\* \* \*

**j. Professional Services**

"Bodily injury," "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

\* \* \*

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

\* \* \*

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

\* \* \*

11. The umbrella policy contains substantially the same professional services exclusion:

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:

\* \* \*

 **(2)** Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

\* \* \*

 **(4)** Engineering services, including related supervisory or inspection services;

\* \* \*

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved the rendering of or failure to render any professional service.

12. The Underlying Lawsuit alleges that Aerowave was involved in the "installation, maintenance, and/or repair of the radios and/or radio system utilized" and contends that Prescher was injured because "the radios and/or radio system failed to work properly." Aerowave was allegedly aware that the radios and/or radio system were not functioning properly but "failed to insist that immediate corrective actions be taken."

13. Prescher's alleged injuries were caused by Aerowave's rendering or failure to render professional services. Therefore, the professional services exclusions preclude Columbia's duty to defend Aerowave in the Underlying Lawsuit.

14. The same reasons that negate the duty to defend likewise negate any possibility Columbia will ever have a duty to indemnify the claims in the Underlying Lawsuit. Accordingly, pursuant to 28 U.S.C. § 2201, Columbia is entitled to a declaration it has no duty to defend or to indemnify Aerowave against the Underlying Lawsuit.

## IV.
### PRAYER

Columbia prays that the Court issue a declaration construing the rights and obligations of

the parties under the Policies, and declare that Columbia has no obligation to defend or indemnify Aerowave against any of the claims in the Underlying Lawsuit. Columbia further prays for any other and further relief to which it may be justly entitled, whether at law or in equity.

        Respectfully submitted,

By: */s/ John Tollefson*
    John Tollefson, Lead Attorney
    State Bar No. 20109400
    johnt@tbmmmlaw.com
    Omar Galicia,
    State Bar No. 24012667
    omarg@tbmmlaw.com
    Matthew Rigney,
    State Bar No. 24068636
    mattr@tbmmlaw.com

    TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
    2811 McKinney Avenue, Suite 250 West
    Dallas, Texas 75204
    (214) 665-0100
    (214) 665-0199 (fax)

    **ATTORNEYS FOR PLAINTIFF COLUMBIA MUTUAL INSURANCE COMPANY**